IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IN RE: ) BK. NO: 14-40929-BTR
)
SHAWN CASPER & AMBER )
STROMAN )
D E B T O R. )

* * * * * * * * * *

TRANSCRIPT OF PROCEEDINGS

* * * * * * * * * *

BE IT REMEMBERED, that on the 7th day of November, 2014, before the HONORABLE BRENDA T. RHOADES, United States Bankruptcy Judge at Plano, Texas, the above styled and numbered cause came on for hearing, and the following constitutes the transcript of such proceedings as hereinafter set forth:

P R O C E E D I N G S

COURTROOM DEPUTY: Page 34, number 197 is Shawn Casper and Amber Stroman. Case 14-40929. Unopposed application for approval of compromise and settlement.

MS. TERRILL: Your Honor, Shelley Terrill on behalf of the Chapter 13 Trustee.

MR. ARNOVE: Your Honor, Greg Arnove, bankruptcy counsel for Mr. Casper and Ms. Stroman.

THE COURT: Okay.

MR. COHEN: Your Honor, I'm sorry. My name is Josh Cohen. I represented -- my firm represented Shawn Casper in a personal injury lawsuit.

THE COURT: Okay. This is a motion -- are you going to present the motion, or is Mr. Arnove presenting the motion?

MR. ARNOVE: I'm going to present it, Your Honor.

THE COURT: All right. You may proceed.

MR. ARNOVE: Thank you. Your Honor, I call Mr. Casper.

THE COURT: Okay. Mr. Casper, if you'll step forward and be sworn.

If you'll step right up here, sir.

(The witness was sworn by the courtroom deputy.)

MS. TERRILL: Your Honor, if I may call one

thing to the Court's attention.

It appears that the motion was amended last night.

THE COURT: Okay.

MS. TERRILL: And I've just been made aware of that.

THE COURT: Okay.

MR. COHEN: Your Honor, I had the amended motion ready to go --

THE COURT: If you'll speak into the microphone.

MR. COHEN: Sorry. I had the amended motion ready about a week and a half, two weeks ago, and I've been trying to communicate both with the Trustee and the bankruptcy attorney about conferencing before I filed it. However, through multiple voice messages on both sides, I never got a hold of them. I finally got a hold of somebody in, I believe, Ms. Countryman's office yesterday. But she didn't really know anything about it. And I told her about this hearing today and I said that it would just get resolved at the hearing.

THE COURT: Okay. What was the amendment?

MR. COHEN: The amended -- the amendment was to Exhibit A -- excuse me, Exhibit B, about the distribution of the settlement agreement for his personal injury settlement.

THE COURT: So what changed?

MR. COHEN: What changed was he would be responsible for amounts that would be owed to Dallas Medical Center.

THE COURT: How much is that?

MR. COHEN: And I believe it was around -- I believe it was around a little over $7,000.

THE COURT: Okay. So in the original one, somebody else was going to pay $7,000 and now he's paying $7,000?

MR. COHEN: In the original one, my office was going to pay the $7,000. And then after speaking with Mr. Casper, he was going to be responsible. And then, also, there might be an additional amended -- an additional amendment or modification to the settlement agreement with respect to our attorney's fees of 33 1/3 percent.

THE COURT: Okay. So bottom line, inform me, what was the difference between the original motion and the motion as amended?

MR. COHEN: A little over $7,000. I don't have the exact --

THE COURT: Okay. So that --

MR. COHEN: It was the difference between -- my problem is, I don't have the original Exhibit A. But the difference was, I want to say, a little over $7,000.

MS. TERRILL: Your Honor, I have that, if I may proffer it to the Court.

THE COURT: Okay.

MS. TERRILL: The original Exhibit A reflects that the total amount remaining after attorney's fees and expenses of 25,686.99, and that included payment to Dallas Medical Center for $7,907.58, that amount is now removed that included an amount of PST Services originally of $25, and the amount now being net of the requested attorney's fees and medical expenses is $34,419.57. And also the amended motion removes the prior representations to the Court that the motion was unapproved, which is the basis -- part of the basis of the Trustee's --

THE COURT: Unapproved or unopposed?

MS. TERRILL: Unopposed. Unopposed, which is part of the basis of the Trustee's objection.

THE COURT: Okay. The original motion provided the debtor was going to receive 25,686. The revised motion provides that the Trustee -- that the debtor is going to receive 34,419. So the debtor is going to receive more money under this amended motion; is that correct?

MR. ARNOVE: Yes, Your Honor.

MR. COHEN: That's correct, Your Honor.

THE COURT: Okay.

MR. ARNOVE: And if I may. We made an

additional change. I didn't know this amendment thing was coming. It's not a good deal for the debtor to have to pay those medical debts himself at the higher amount. What we have talked about doing is having the debtor get a flat $30,000. Have all of the medical creditors get paid that were notified in the original motion. And that the difference between the 25 and the $30,000 that would be the debtor's portion, would come out of personal injury counsel's attorney's fees. It's somewhere in the neighborhood of 4 to $5,000, whatever the difference between the 25.6 is and then the 30 that he believes he was promised. It's kind of confusing, Your Honor.

THE COURT: Yeah.

MS. TERRILL: Additionally, it appears that the motion is seeking for complete turnover of the net proceeds to the debtor. And that was another basis of the Trustee's objection. The debtors amended the exemptions, which there is an outstanding objection to those exemptions which I don't believe is ripe at this time. And it may be that we can all reach an agreement, if we know what the figures and the numbers are.

THE COURT: Okay. You have the figures and the numbers, Mr. Arnove, is that what I'm understanding?

Okay. Here's some things I don't understand. Okay? And since I have to rule, I sort of have to understand.

These medical bills, are these post-petition bills, or pre-petition bills? Are these claims against the estate, or claims against the funds? Are these -- when you say the client is responsible for them in the amended agreement, or the amended motion, are those administrative priority claims or pre-petition claims that will be compromised? And if there's going to be compromise, who's doing the compromising at what dollars?

Can you explain those things to me?

MR. ARNOVE: I can, Your Honor.

THE COURT: Okay.

MR. ARNOVE: I understand that these are post-petition claims.

THE COURT: Okay. Because there was a post-petition car accident?

MR. ARNOVE: The accident occurred pre-petition, but this treatment kept happening. The doctors weren't involved, until they got involved. But the accident was like --

THE COURT: Pre-petition.

MR. ARNOVE: -- January. And I think we filed the case in May.

THE COURT: Okay. But post-petition, he got some medical treatment that --

MR. ARNOVE: Yes, Your Honor.

THE COURT: Okay.

MR. ARNOVE: And as in many of these personal injury cases, the medical treatment providers obtained a lien on the respective proceeds.

THE COURT: Okay.

MR. ARNOVE: And then after settlement is reached, personal injury counsel works with the providers to try to bring down those claims, as much as possible.

THE COURT: Right.

MR. ARNOVE: What happened in this case was $100,000 policy. And they hit the limits. Mr. Casper is not anywhere near being completely healed.

THE COURT: I could see that.

MR. ARNOVE: But with the policy limits being hit, I understand personal injury counsel, you know, there was nothing more to do. What the initial motion had was paying the reduced amounts to all of those medical providers, based on negotiations with personal injury counsel and the providers. And my notes, I think, were borrowed. But I think it was something around 25,686 in the original motion was going to go to the debtor. Personal injury counsel, 33 1/3 percent, so 33,000 plus. Debtor expressed some concern to personal injury counsel that the 25,000 was not going to be enough, because of his condition. And was told by them that they would bring it up to 30. We assumed it was going

to come out of their fees, since all of the medical claims had been negotiated. The amended motion filed 34,000 going to Mr. Casper, but it showed less money going to the medical providers and leaving him on the hook for it, which we don't want that either. We want everybody who worked this to get paid the proper amount.

Mr. Cohen and I discussed the only other source of funds in the case to make up the difference to get Mr. Casper to 30 was an award of attorney's fees, 33 1/3 to his firm, be reduced by -- and, again, I don't have my notes in front of me or a calculator, but to be reduced by like 4,300, or whatever the --

THE COURT: So Exhibit A needs to be amended again?

MR. ARNOVE: Yes. Or an order be made.

THE COURT: So Exhibit A would be amended to provide that the Dallas Medical Center would receive the 7,907.58 and that PST would receive 25 and the difference would come out of the fees that would be paid to counsel; is that what you're saying?

MR. ARNOVE: Yes, Your Honor.

THE COURT: Is that agreeable to you, sir?

MR. COHEN: Your Honor, yes.

THE COURT: Okay. All right. So basically you're agreeing to go back to the original Exhibit A, except

that the attorney's fees amount would be reduced from 3,333 to whatever that number is so that the client can receive 30,000; is that correct?

MR. ARNOVE: That's correct, Your Honor.

THE COURT: Okay. And that's agreeable to the debtor; is that right, sir?

THE WITNESS: Yes, ma'am.

THE COURT: Okay. And that's agreeable to counsel, correct?

MR. COHEN: Yes, Your Honor.

THE COURT: Okay. Did you have an objection to that, Ms. Terrill?

MS. TERRILL: No, Your Honor.

THE COURT: Okay. So is there any objection to the compromise as discussed on the record today?

MS. TERRILL: No, Your Honor.

THE COURT: All right. Mr. Arnove, you'll submit an order to the Court approving the compromise as we've discussed on the record today, which would reduce the counsel's fee, net the client $30,000, and pay Dallas Medical Center and PST as stated in the original Exhibit A, correct?

MR. ARNOVE: Yes, Your Honor.

THE COURT: Okay. And that is all subject to the -- so the debtor would receive that amount subject to whatever the exemption issues are, right? So by approving

the compromise, the Court is not approving the exemption, the exemption issue will stand on its own?

MR. ARNOVE: Yes, Your Honor.

THE COURT: Okay. You may step down, sir. Thank you.

All right. You'll submit that order.

MR. ARNOVE: I will, Your Honor.

THE COURT: Thank you.

MR. ARNOVE: Thank you.

MS. TERRILL: Your Honor, one request for the Court and Mr. Cohen about submitting motions to the Court with certificates of conference that were not had and indicating that those motions are not opposed. That seems to be a problem with the Trustee's Office.

THE COURT: Yes, that is.

Is that -- who filed this motion? Mr. Cohen filed this motion.

MR. COHEN: Your Honor, I filed it yesterday, just to have this -- Your Honor, I filed this late yesterday just to try to have this on the record and just have it for this hearing today, after multiple times of trying to get a hold of the Trustee --

THE COURT: I understand you weren't able to. But you can't file a motion that says it's unopposed when you don't know whether it's opposed or not. You just need to

change the title. You understand that?

MR. COHEN: Yes, Your Honor. I apologize for that. I should have changed the title.

THE COURT: Okay. Don't let it happen again, right?

MR. COHEN: Yes, Your Honor.

MS. TERRILL: Your Honor, that was the first motion. That motion also contained a certificate of conference that Mr. Cohen certified that the Trustee was not opposed.

MR. COHEN: Your Honor, I talked to -- I talked to the other side and they said they were unopposed to it. I don't have it in my notes, but I know that I made contact. I know I talked to the Trustee on that.

THE COURT: Who did you talk to?

MR. COHEN: I apologize, Your Honor. I don't have the records in front of me. I don't have it in my notes. But I would not have filed the first one, absolutely not, without talking to both Mr. Arnove and the Trustee.

THE COURT: So you talked to Ms. Countryman?

MR. COHEN: I think so. I'm not sure. I don't remember when it was originally filed, but I know I spoke with somebody there.

THE COURT: We need to make sure. There's a lot of somebody's there. Okay? And I'm sure Mr. Arnove is

perfectly capable of explaining to you, you can call. And just because you talk to the receptionist who says, Oh, I don't know, that doesn't mean you get to file a motion that says it's unopposed. Okay?

MR. COHEN: Yes, Your Honor.

THE COURT: You better document very clearly -- I believe Ms. Countryman has one lawyer and one lawyer only; is that right, Ms. Terrill?

MS. TERRILL: That's correct.

THE COURT: And that would be Ms. Terrill. And Ms. Countryman is represented. That means ethically, you can't talk to anybody other than Ms. Terrill.

MR. COHEN: Yes, Your Honor.

THE COURT: And if you did not get the consent of Ms. Terrill, you had a problem. Do you understand?

MR. COHEN: Yes, Your Honor.

THE COURT: Okay. So we're very clear. When you document that you -- and you file a motion with the Court representing to the Court that it's unopposed, it better be unopposed and you better document clearly who you talked to and when you talked to that person, if there's an issue. Do you understand?

MR. COHEN: Absolutely, yes, Your Honor.

THE COURT: Okay. So I talked to somebody on the phone doesn't count. And your certificate of conference

better be accurate when you represent it to the Court, because this Court relies on them.

MR. COHEN: Yes, Your Honor.

THE COURT: Okay. Thank you. Parties are excused.

MR. ARNOVE: Thank you, Your Honor.

(End of Proceedings.)

C E R T I F I C A T E

I, CINDY SUMNER, do hereby certify that the foregoing constitutes a full, true, and complete transcription of the proceedings as heretofore set forth in the above-captioned and numbered cause in typewriting before me.

/s/Cindy Sumner

CINDY SUMNER, CSR #5832
Expires 12-31-15
National Court Reporters
16 Gettysburg Lane
Richardson, Texas 75080
214 651-8393
Firm #417